[Nos. 11709–6–II; 11744–4–II.   Division Two.   November 5, 1990.]

ARLENE V. FLETCHER, ET AL, *Respondents,* v. WEST AMERICAN INSURANCE COMPANY, *Appellant.*

LISA WILLIAMSON, *Respondent,* v. WEST AMERICAN INSURANCE COMPANY, *Appellant.*

*Cathy E. Smith (Paul L. Roess* and *Acker, Underwood, Norwood & Hiefield,* of counsel), for appellant.

*John A. Barlow* and *Walstead, Mertsching, Husemoen, Donaldson & Barlow; James E. Warme* and *Calbom, Pond, Falkenstein, Warme & Marshall,* for respondents.

REED, J.*—West American Insurance Company appeals a summary judgment determining that the company is obligated to extend liability insurance coverage for an automobile accident, and denying its cross claim for indemnity against Longview Insurance Agency for issuing binders in excess of authority. Finding a genuine issue of material fact that should have precluded summary judgment, we reverse the finding of coverage. We affirm the summary judgment denying indemnity.

On April 2, 1984, Ed Harris, with assistance from his parents Frank and Kathleen Harris, bought a 1978 Chevrolet Malibu. That same day, Kathleen Harris called Longview Insurance Agency to procure coverage for the vehicle. The Harrises had obtained automobile insurance coverage with West American through the agency previously, and Mrs. Harris expressed interest in having the new car added to the family's existing coverage with West American. After receiving the necessary information, agent Ruth McCoy assured Mrs. Harris that the car would be covered.

McCoy later received inquiries from the credit union that had financed the car, and on July 23, 1984, in response thereto, hand–delivered a written binder to the credit union. It is undisputed that the binder forms used by

---

*Judge Edward P. Reed was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the court pursuant to CAR 21(c).

McCoy were not West American's, and provided for coverage (30 days) beyond that which West American's agency agreement with Longview Insurance authorized.[1]

During this same period of time McCoy also received calls from Mrs. Harris, who was concerned that she had not received a notice of binder, a bill, or any other materials indicating coverage for the Malibu. Again, McCoy assured Harris that there was coverage, and that such delays were not unusual. Ultimately, Mrs. Harris learned that the credit union had received a binder. Because of her past dealings with insurance matters, she believed that the binder was valid for 30 days. Harris continued to call McCoy intermittently to check on the coverage, particularly after receiving correspondence from West American indicating that the Malibu was not among the vehicles covered under the Harris family policy. On each occasion, she received assurances from Longview that the car was covered.

On October 20, 1984, the Malibu driven by Ed Harris was involved in a collision with a vehicle driven by plaintiff Arlene Fletcher. Plaintiffs Lisa Williamson and Tom Teeters, passengers in the Fletcher vehicle, were injured.

After reading about the accident in the local paper, McCoy decided to check to make sure coverage had been bound. She then learned that the Harris insurance application had been misfiled, and nothing had ever been sent to West American. McCoy called the claims department at West American, and sent the company an insurance application (using the original date of request as the effective date) and, as per instructions from West American, a memo detailing the unfortunate circumstances. West American issued a policy covering Ed Harris and the vehicle effective as of October 22, 1984.

---

[1]The July 23 binder also had a notation reading "Note—We have had coverage on this car since 5/2/84." After the 30–day period had expired, a second binder was sent to the credit union. However, it was simply a copy of the original binder of July 23 and consequently was ineffective. No other written binders were issued, although, according to Harris, McCoy continued to give oral assurances of coverage. No premium was ever paid or tendered.

The Harrises subsequently brought an action against Longview and Ruth McCoy for negligence in the processing of their insurance application. In exchange for an agreement not to sue them, the Harrises assigned to Fletcher their rights against McCoy and Longview. Fletcher, her insurer, Teeters, and the Harrises brought suit against McCoy, Longview and West American on July 21, 1986.[2] West American's answer included a cross claim for indemnity against McCoy and Longview Insurance.

The Harrises and West American brought cross motions for summary judgment on the issue of coverage, and McCoy and Longview moved for summary judgment on the issue of indemnity. The trial court granted the Harris motion on the issue of coverage, as well as the Longview–McCoy motion regarding indemnity. West American appeals from both orders of judgment.

■ When reviewing a summary judgment, an appellate court engages in the same inquiry as the trial court. *Westman Indus. Co. v. Hartford Ins. Group,* 51 Wn. App. 72, 76, 751 P.2d 1242, *review denied,* 110 Wn.2d 1036 (1988). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). The court must consider all facts submitted and all reasonable inferences from the facts in the light most favorable to the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

As previously noted, it is undisputed that Longview exceeded the limitations placed upon the agency's actual authority to bind West American. Consequently, in order for the Harrises to prevail, they must show that the

---

[2] On January 25, 1988, this action was consolidated with a similar action brought by Williamson, and consolidated judgment was ordered on all summary judgment issues.

attempt to bind West American was within the apparent scope of the agency's authority.

■ Apparent authority of an agent can be inferred only from the acts and conduct of the principal; the extent of an agent's authority cannot be established by his own acts and declarations. *Lamb v. General Assocs., Inc.*, 60 Wn.2d 623, 627, 374 P.2d 677 (1962); *Equico Lessors, Inc. v. Tow*, 34 Wn. App. 333, 338, 661 P.2d 597 (1983). Moreover,

> The burden of establishing agency rests upon the one who asserts it. Facts and circumstances are sufficient to establish apparent authority only when a person exercising ordinary prudence, acting in good faith and conversant with business practices and customs, would be misled thereby, and such person has given due regard to such other circumstances as would cause a person of ordinary prudence to make further inquiry.

(Citations omitted.) *Lamb v. General Assocs., Inc.*, 60 Wn.2d at 627–28; *Equico Lessors, Inc. v. Tow*, 34 Wn. App. at 338.

■ In *Fanning v. Guardian Life Ins. Co. of Am.*, 59 Wn.2d 101, 104, 366 P.2d 207 (1961), the court upheld the following jury instruction:

> An insurance company is bound by all acts, contracts or representations of its agent which are within the scope of his apparent authority, notwithstanding the fact that they may be in violation of private instructions or limitations upon his authority, unless the person with whom the agent is dealing has either actual or constructive knowledge of the agent's limitation of authority.

The evidence before the trial court by affidavit and deposition creates a genuine issue as to whether Mrs. Harris should be charged with knowledge, either actual or constructive, of McCoy's limited authority to bind West American. Mrs. Harris testified that, based upon her previous experience in purchasing such insurance, she knew binders were good for only 30 days. She became concerned when she did not receive anything directly from the company in the way of a policy or a billing for premiums. As late as August, when the family policy to which the vehicle was to be added was temporarily canceled for nonpayment of premiums, she saw that the Malibu was not listed among

the vehicles covered. When informed after the October accident that there was no coverage, she was not surprised.

Further, there is no evidence that Mrs. Harris previously had experienced such inordinate delays in obtaining proof of coverage from West American. Nor is there any suggestion that West American in any manner previously had approved, condoned, or ratified similar acts or omissions of its agents. There must be a limit beyond which there is a duty to inquire and beyond which there is no coverage, despite repeated assurances from an agent who otherwise would have authority to bind.

A jury should decide whether the unusual circumstances were such as to place upon Mrs. Harris the burden of making further inquiries and if she should be charged with knowledge of the actual limitations on Longview's authority to bind West American in the manner attempted. Summary judgment was not appropriate.

█ West American also argues that it should be indemnified by McCoy and Longview if coverage ultimately is afforded by the policy. The trial court disagreed and so do we. The defaults of McCoy and Longview were not the proximate cause of any damage to West American. The company chose to issue a policy with a postaccident effective date without conducting an investigation, and failed to show that it would have rejected the Harris application or canceled the formal policy before the accident. *Hays v. Farm Bur. Mut. Ins. Co.*, 225 Kan. 205, 589 P.2d 579, 582 (1979); Annot., *Liability of Insurance Agents for Exposure of Insurer to Liability, Because of Failure To Fully Disclose or Assess Risk or To Report Issuance of Policy*, 35 A.L.R.3d 821, 827–28, § 5 (1971). *See also* Restatement (Second) of Agency § 401 (1958).

The summary judgment denying indemnity is affirmed. The summary judgment finding coverage is reversed and that issue is remanded for trial.

Petrich, J., concurs.

ALEXANDER, C.J. (dissenting)—I dissent because I believe there are no genuine fact issues that need to be resolved at a trial. Consequently, I would have us affirm the trial court's finding that there was coverage for the Harrises' automobile.

As the majority points out, an insurance company is bound by all representations of its agents which are within the scope of the agent's authority, unless the person with whom the agent is dealing has actual or constructive knowledge of the limitations on the agent's authority.

In my judgment, reasonable persons could only conclude that the Harrises were unaware of facts or circumstances that would charge them with knowledge that McCoy could not bind the West American Insurance Company. Frank and Kathleen Harris had been customers of the Longview Insurance Agency for some time prior to the transaction in question and there is no indication in the record that they had experienced any difficulties with that agency in the past. When Kathleen Harris contacted the agency to procure insurance for the 1978 Chevrolet Malibu, Ruth McCoy of that agency assured her that the car would be covered. Thereafter, McCoy delivered a written binder to the credit union that was financing the car purchase for the Harrises. When Kathleen Harris called the agency to express concern that she had not received a notice of binder, a bill or other materials showing coverage, she was again told that the car was covered and that any delay in receiving the materials was not unusual. Thereafter, Kathleen Harris called again and received additional assurances that coverage existed.

The majority concludes that a jury should decide whether or not the Harrises should have done something more. It seems obvious to me that the Harrises did all that any reasonable person would or should do. Indeed, they did more than most persons would. What would the majority have the Harrises do? Should they have disbelieved the agent when she assured them there was coverage and then called the home office of the West American? Should they have called the State Insurance Commissioner? I say no.

The Harrises checked with their agent when they had concerns and they received repeated assurances from the agent that there was coverage. If the agent had been vague in her response or if she had equivocated in any way then, perhaps, the Harrises would have been put on notice to make further inquiries. There was no equivocation or vagueness and, consequently, the insurance company should be bound by the assurances of its agents.

Reconsideration denied March 6, 1991.

Review by Supreme Court pending May 15, 1991.